**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TAMMY JO LONG ) | |
| ) | |
| PLAINTIFFS ) | |
| ) | CASE NUMBER: |
| vs. ) | |
| ) | |
| BAC HOME LOANS SERVICING, LP; THE BANK ) | |
| OF NEW YORK MELLON fka THE BANK OF ) | |
| NEW YORK AS TRUSTEE FOR THE ) | DISTRICT JUDGE |
| CERTIFICATEHOLDERS CWMBS, INC. CHL ) | |
| MORTGAGE PASS-THROUGH TRUST 2004- ) | |
| HYB9, MORTGAGE PASS-THROUGH ) | |
| CERTIFICATES SERIES, 2004-HYB9; SHUPING, ) | MAGISTRATE JUDGE |
| MORSE & ROSS, LLP; S. ANDREW SHUPING, ) | |
| JR; MORTGAGE ELECTRONIC REGISTRATION ) | |
| SYSTEMS, INC.; and JOHN & JANE DOES 1-100 ) | |
| ) | |
| DEFENDANTS ) | |

**PLAINTIFF'S FIRST VERIFIED COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF; DECLARATORY RELIEF; VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT; VIOLATIONS OF THE FAIR CREDIT REPORTING ACT; VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT; AND VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

**INTRODUCTION**

1. Plaintiff Tammy Jo Long, by and through her attorney Robert K. Lock, Jr., files this first verified complaint against the above-named Defendants for violations of the Fair Debt Collections Practices Act, 15 USC §1692, *et seq*. ("FDCPA"), the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq*., the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*., and the Fair Credit Reporting Act.

**VENUE AND JURISDICTION**

2. This Court has jurisdiction under the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §1692, *et seq.*

3. This Court also has jurisdiction under the laws of the United States and in light of diversity of the Parties, 28 U.S.C. §§1331, 1332.

4. The amount in controversy, exclusive of interests and costs exceeds $75,000.00.

5. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.
6. The doctrine of pendent and supplemental jurisdiction is proper under 28 U.S.C. § 1367.
7. Venue is proper in this district as Plaintiffs reside here, Defendants transact business here, and the acts and transactions upon which this complaint is based occurred here.

### PARTIES

8. Plaintiff Tammy Jo Long ("Plaintiff", "Long" or "Plaintiff Long") is a natural person and was at all times relevant hereto a resident and citizen of the State of Illinois. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. §1692a(3), and a person that term is defined under 815 ILCS 505 §1(c).
9. Defendant BAC HOME LOANS SERVICING, LP ("BAC") is a foreign corporation acting as the alleged servicer of the loan that is the subject of this cause of action. BAC is a debt collector as defined by and within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and as a corporation defined under 815 ILCS 510 § 1(5), engaged in the business of collecting debts in this State where Defendants regularly collect or attempt to collect debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of debts using the mails and telephone. BAC is a Texas Limited Partnership as successor in interest to Countrywide Home Loans Servicing, LP.
10. Defendant BANK OF NEW YORK MELLON fka BANK OF NEW YORK as TRUSTEE FOR THE CERTIFICATEHOLDERS CWMBS, INC. CHL MORTGAGE PASS-THROUGH TRUST 2004-HYB9, MORTGAGE PASS-THROUGH CERTIFICATES SERIES, 2004-HYB9 ("BONY" or "Trustee") is a trust formed in the State of Delaware operating under New York law, which has alleged that it owns the mortgage note and deed of trust on Plaintiff's property in the State of Georgia, and which is engaged as "debt collectors" as defined by and within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and as a corporation defined under 815 ILCS 510 § 1(5), engaged in the business of collecting debts in this State where Defendants regularly collect or attempt to collect debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of debts using the mails and telephone. Defendant's address is 101 Barclay Street, New York, NY 10286.
11. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation that alleged to transfer Plaintiff Long's mortgage loan note and deed of trust to Trustee and is engaged as "debt collectors" as defined by and within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and as a corporation defined under 815 ILCS 510 § 1(5), engaged in the business of

    collecting debts in this State where Defendants regularly collect or attempt to collect debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of debts using the mails and telephone.

12. Defendant SHUPING, MORSE & ROSS, LLP. ("SMR" or "Law Firm") is a debt collection law firm located in the State of Georgia that is seeking to foreclose on Plaintiff's property in the State of Georgia, and is engaged as "debt collectors" as defined by and within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and as a corporation defined under 815 ILCS 510 § 1(5), engaged in the business of collecting debts in this State where Defendants collect or attempt to collect debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of debts using the mails and telephone. Defendants can be served at 6259 Riverdale Road, Suite 100, Riverdale, Georgia 30274.

13. Defendant S. ANDREW SHUPING, JR. ("SHUPING"), is an attorney in the employ of Defendant Law Firm, and is a debt collector located in the State of Georgia that is seeking to foreclose on Plaintiff's property in the State of Georgia, and is engaged as a "debt collector" as defined by and within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and engaged in the business of collecting debts in this State where Defendant collects or attempts to collect debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of debts using the mails and telephone. Defendant can be served at 6259 Riverdale Road, Suite 100, Riverdale, Georgia 30274.

14. Defendants, John & Jane Does 1 – 100, are all natural persons, corporations, investors, parties, or one or more enterprises employed by the Defendants and/or unknown others as debt collectors and are involved in the instant matter. Said John & Jane Does and Roes are currently unknown to the Plaintiffs. Said John & Jane Does will be joined as necessary parties upon further discovery of their true nature and liability once these facts are known and supported by competent evidence.

## **FACTS**

**The History of the Plaintiff's Mortgage Loan**

15. Plaintiff Long entered into a residential mortgage loan agreement with a company named COUNTRYWIDE HOME LOANS, INC. ("COUNTRYWIDE") on November 19, 2004 related to the property located at 5456 Captains View, Tybee Island, Georgia 31328 ("the property").[1] Said note was primarily for personal, family or household purposes associated with a residence

---

[1] COUNTRYWIDE is not a party to this action, as it was merged into Bank of America on July 1, 2008.

owned and maintained by Plaintiff, and is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

16. The loan that Plaintiff entered into was originated by a promissory note in the amount of $650,000.00 ("the note"), secured by the property via security deed ("deed"),.

17. To date Plaintiff Long has paid over $400,000.00 on the loan on the property. In addition, Plaintiff has invested approximately $75,000.00 in the renovation and maintenance of the property.

18. Plaintiff Long has acknowledged that she owes an obligation on the note and has done all that is in her power to identify the lawful owner and holder in due course of the note so that Plaintiff can satisfy that obligation. (See Exhibit A, Affidavit of Plaintiff Tammy Jo Long, attached hereto and incorporated herein by this reference)

**The History of Plaintiff's Disputes**

19. Plaintiff Long disputes that she owes any debt obligation on the note to either BONY, BAC, SMR, SHUPING, MERS or any of the other Defendants named in this cause of action.

20. Within the past year Plaintiff Long has attempted on numerous occasions by certified mail, fax, email and telephone to determine the true owner and holder in due course of the promissory note through all Defendants and others. In each instance Plaintiff requested proof as to who the true owner and holder of the note is, as is required of Plaintiff by law as the maker of the note seeking to satisfy an obligation on the loan. All parties have refused to provide Plaintiff the information that Plaintiff requires to resolve this matter. (See Exhibit B, June 8, 2010 Letter from Plaintiff, attached hereto and incorporated herein by this reference)

21. Specifically, Georgia law requires Plaintiff Long to be diligent in the determination of the holder in due course of her note so as not to have liability for paying off the wrong lender and the Georgia Supreme Court mandates that this is her responsibility.

22. Plaintiff Long has sent several letters to Defendants under Georgia's Tacit Procuration statutes found in O.C.G.A §§ 24-4-23 and 24-3-36 outlining the facts contained herein and wherein she admits that she owes an "unsecured" debt of an "unknown amount" to "unknown parties or entities" and requesting their identification in order to satisfy any obligation she may have to such parties as well as settle any claims she has against such parties since they are not holders in due course of her note and have assumed the liability of the originating lender.

23. Defendants have failed to timely and/or properly respond to Plaintiff Long's letters, thus admitting the facts contained therein. In particular, by their failure to properly and timely respond to Plaintiff's tacit procuration letters, Defendants have admitted that none of the Defendants are a

secured creditor that can non-judicially foreclose on her property and they have no capacity, standing, or authority to accelerate any debt owed by Long, satisfy her deed; cancel and return her note; modify, extend, amend or change any terms of the note or deed; exercise any power of attorney she purportedly executed; and that the Defendants are not the Lender as defined in her original promissory note.

24. As a result of the refusal of Defendants to identify who the holder of the note was so that Plaintiff could pay off the loan, Plaintiff enlisted the assistance of attorneys to investigate the facts and circumstances surrounding the origination, funding, servicing and foreclosure of the loan.

**Defendant's Tender of The Bogus May 27, 2010 Assignment of Deed**

25. In violation of state and federal consumer protection laws and the statute of frauds, on or about May 27, 2010 Defendants BAC, MERS, SHUPING and SMR attempted to transfer the Long Note to the Defendant Trust via a fraudulent assignment, over six-years after it could have been lawfully transferred to the trust. (See Exhibit C, May 27, 2010 Assignment, attached hereto and incorporated herein by this reference)

26. Plaintiff Long's examination of the alleged assignment caused Plaintiff a great deal of anxiety, as the defects in the document were so apparent and so great that it made Plaintiff feel that she was the victim of the type of real estate scam that has been described in the media over the past year with respect to all of the Defendants.

27. Specifically, the document that was presented as the alleged assignment was not executed until May 27, 2010, and was not recorded, despite the fact that the loan could not be assigned to BONY after December 23, 2004, as that was the closing date for mortgages to be assigned by CWMBS, Inc. as Depositor into the trust that BONY is the Trustee for.

28. Further, the alleged assignment purports to transfer the Plaintiff's note and security deed from Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the now defunct COUNTRYWIDE, directly to BONY. As with the alleged note, Plaintiff knew from her investigation that:

    a. COUNTRYWIDE was defunct, having been acquired by Bank of America on July 1, 2008. As such, it did not exist as an entity able to convey anything on May 27, 2010 to anyone.

    b. MERS provided no evidence of authority from Bank of America that would allow it to transfer the former interest of COUNTRYWIDE to anyone.

    c. CWMBS, Inc. is the Depositor for the trust that BONY claims to be the Trustee for, and is the only entity that can assign the note or deed of trust directly to BONY. Nowhere on the alleged assignment is CWMBS, Inc. mentioned, nor could CWMBS, Inc assign any interest of COUNTRYWIDE on May 27, 2010, as COUNTRYWIDE has been merged into Bank of America on July 1, 2008.

    d. In the assignment, MERS attempted to assign an interest in the note when MERS was not a party to the note.

    e. The assignment contains a corporate seal for Defendant MERS that indicates that MERS is acting as a Georgia corporation. However, MERS is not registered as a Georgia corporation, nor is it licensed or registered to do business in the state of Georgia in any capacity.

    f. The signatory of the alleged assignment is Defendant SHUPING, who is an attorney and employee of Defendant SMR, with no apparent authority to act on behalf of either MERS, COUNTRYWIDE or BONY.

29. Said actions were also directly contrary to the New York trust laws and the trust indenture which strictly govern the actions of the Defendant BONY as Trustee as to the logistics, sequence and timing of the sale and deposit of Plaintiff's mortgage loan into the trust under the terms of the Pooling & Servicing Agreement ("PSA") for the trust.

**Defendants' Acts Violated The Terms of The Pooling & Servicing Agreement**

30. The relevant provisions of the Pooling & Servicing Agreement ("PSA") executed on or about December 1, 2004 between CWMBS, Inc. as Depositor, COUNTRYWIDE as Seller, Countrywide Home Loans Servicing, LP as Master Servicer, and BONY as Trustee is located at the SEC website located at http://sec.gov/Archives/edgar/data/906410/000089109204006011/e20190_424b5.txt.

31. The following is a summary of the material provisions of the pooling and servicing agreement for the Defendant Trust.

Assignment of Mortgage Assets

    Assignment of the Mortgage Loans. At the time of issuance of the certificates of a series, the depositor will cause the mortgage loans comprising the related trust fund to be assigned to the trustee, together with all principal and interest received by or on behalf of the depositor on or with respect to the mortgage loans after the cut-off date, other than principal and interest due on or before the cut-off date and other than any retained interest

specified in the related prospectus supplement. The trustee will, concurrently with the assignment, deliver the certificates to the depositor in exchange for the mortgage loans. Each mortgage loan will be identified in a schedule appearing as an exhibit to the related pooling and servicing agreement. The schedule will include information as to the outstanding principal balance of each mortgage loan after application of payments due on the cut-off date, as well as information regarding the mortgage rate, the current scheduled monthly payment of principal and interest, the maturity of the loan, the Loan-to-Value Ratio at origination and other specified information.

In addition, the depositor will deliver or cause to be delivered to the trustee (or to the custodian) for each mortgage loan:

- the mortgage note endorsed without recourse in blank or to the order of the trustee, except that the depositor may deliver or cause to be delivered a lost note affidavit in lieu of any original mortgage note that has been lost,
- the mortgage, deed of trust or similar instrument with evidence of recording indicated on it (except for any mortgage not returned from the public recording office, in which case the depositor will deliver or cause to be delivered a copy of the mortgage together with a certificate that the original of the mortgage was delivered to the recording office or some other arrangement will be provided for),
- an assignment of the mortgage to the trustee in recordable form and
- any other security documents specified in the related prospectus supplement or the related pooling and servicing agreement.

32. The fraudulent assignment that was executed by Defendant SHUPING on May 27, 2010 attempted to assign the note and security deed directly from Countrywide Home Loans, Inc. through its nominee, Defendant MERS to Defendant BONY. This fraudulent attempted transfer misrepresented the nature, character and legal status of the alleged debt, while skipping at least one necessary intervening assignment to CWMBS, Inc. as required by the PSA for the Trust.

33. In addition, the fraudulent assignment to the trust was attempted while the Note was in default, which is prohibited under the terms of the PSA.

34. All of this was explained to the Defendants via letter and email immediately after Plaintiff's receipt of the bogus assignment. (See Exhibit D, email to Defendants at Plaintiff's direction from the Vice President of Plaintiff's company, attached hereto and incorporated herein by this reference)

**Defendant's Tender of The Bogus June 24, 2010 Assignment of Deed**

35. Unfortunately, rather than admit the fact that Defendants had no valid claim in foreclosure against Plaintiff, Defendants brazenly produced, executed and recorded a second fraudulent assignment. This document contained all of the same fatal defects as the initial assignment described above,

with the exception that the second assignment did not include the bogus MERS corporate seal. The alleged assignment was executed on June 24, 2010 and recorded with the Chatham County Georgia Superior Court on June 29, 2010. (See Exhibit E, Defendants' June 24, 2010 Corrected Assignment, attached hereto and incorporated herein by this reference)

36. As a result of the Defendants' repeated attempts to pass off bogus instruments regarding the title to her property, the uncertainty in the real estate market, and Plaintiff's growing distrust over the inability or refusal of Defendants BAC, BONY or SMR to provide Plaintiff the identity of the true owner of the note so that Plaintiff could pay off the loan, Plaintiff ceased payments on the loan until Defendants provided Plaintiff proof that they truly represented the lawful owner and holder of the note. (See Exhibit F, Plaintiff's June 25, 2010 Letter to Defendants, attached hereto and incorporated herein by this reference)

37. Despite the actions of Defendants in attempting to assert claims to her property based upon bogus instruments, Plaintiff has responded to collection letters, calls and Notices of Foreclosure Sale from SMR, including, but not limited to repeated notices and correspondence from SMR dated June 9, 2010 (Exhibit C), January 24, 2011 (See Exhibit G attached hereto and incorporated herein by this reference), January 28, 2011 (See Exhibit H, attached hereto and incorporated herein by this reference) and February 1, 2011 (See Exhibit J, attached hereto and incorporated herein by this reference).

38. In these and all other communications that Plaintiff has had with Defendants, Plaintiff has disputed the alleged debt, and requested proof that BONY and the Trust are in fact the true owner and holder of the note. Plaintiff's requests have been reasonable, and have only sought a routine presentment of documentation establishing the chain of title of the instrument from COUNTRYWIDE, the now defunct original lender, through all necessary intervening indorsers, to BONY. (See Exhibit I, Plaintiff's January 31, 2011 Letter of Dispute, attached hereto and incorporated herein by this reference)

**Defendants' Tender of The Bogus Note**

39. Instead of providing validation and verification of the alleged debt and proof of their claim against Plaintiff through what should be the routine transmission of documentation establishing the true chain of title of the note and security deed, Defendants have provided Plaintiff the two bogus assignments described above, and uncertified copies of what they claim is the original note as proof of their claims ("the note"). (See Exhibit J, a true and correct copy of the letter from Defendants and the alleged note document that Defendants sent to Plaintiff on or about February 1, 2011, attached hereto and incorporated herein by this reference)

40. Plaintiff has acknowledged that the document bears a resemblance to the note that Plaintiff executed on November 19, 2004. However, Plaintiff has been unable to verify the accuracy or authenticity of the note due to Defendants continued refusal to produce the document for inspection by Plaintiff and her attorneys, despite repeated requests.

41. Of particular importance to this matter is the fact that the note document that was produced by Defendants on February 1, 2011 has no indorsements whatsoever. If this is the note that Defendants are foreclosing on, they have no standing to do so, as the note, and security deed that follows the note by law, were never lawfully transferred to the Defendant BONY.

42. In addition, the note glaringly lacked the intervening indorsement of at least one entity that Plaintiff knew from her investigation must be present for the note to pass title to BONY under the trust agreement that governs the actions of Defendant BONY. (CWMBS, Inc.) CWMBS, Inc. is the Depositor for the Defendant trust that BONY claims to be the Trustee for, and is the only entity that can assign the note or deed of trust directly to BONY as Trustee. Nowhere on the alleged note is CWMBS, Inc, or BONY mentioned.

43. According to Defendants' own agreement and sworn statements before the United States Securities Exchange Commission, the Cut-off Date for the Defendant trust was December 1, 2004, the Closing Date was December 23, 2004, and no non-performing note and security deed could lawfully or equitably be assigned to the trust after that date. The Defendants' attempt to transfer the Long Note and Security Deed over six years after the legal timeframe for such transfer is void *ab initio*, irrespective of the defects in the obviously bogus assignment documentation.

44. In light of Plaintiff's already heightened suspicions as to the validity of the claims of Defendants against her, Plaintiff's examination of the alleged note and assignment caused severe emotional distress. Specifically, the lack of an indorsement of the note suggests that the loan was held by COUNTRYWIDE and never transferred to the trust.

45. An essential aspect of the mortgage securitization process is that the issuing trust for each Mortgage Backed Security ("MBS") offering must obtain good title to the mortgage loans comprising the pool for that offering. This is necessary in order for the MBS holders to be legally entitled to enforce the mortgage loans in case of default. Two documents relating to each mortgage loan must be validly transferred to the trust as part of the securitization process – a promissory note and a security instrument (either a mortgage or a deed of trust).

46. The rules for these transfers are governed by the law of the state where the property is located, by the terms of the pooling and servicing agreement ("PSA") for each

securitization, and by the law governing the issuing trust (with respect to matters of trust law). Generally, state laws and the PSAs require the promissory note and security instrument to be transferred by indorsement, in the same way that a check can be transferred by indorsement, or by sale. In addition, state laws generally require that the trustee have physical possession of the original, manually signed note in order for the loan to be enforceable by the trustee against the borrower in case of default.

47. In order to preserve the bankruptcy-remote status of the issuing trusts in RMBS transactions, the notes and security instruments are generally not transferred directly from the mortgage loan originator to the trust. Rather, the notes and security instruments are generally initially transferred from the originator (*e.g.*, Countrywide Home) to the depositor (*e.g.*, CWMBS, Inc.), either directly or via one or more special-purpose entities established by Countrywide Financial. After this initial transfer to the depositor, the depositor transfers the notes and security interests to the issuing trust for the particular securitization. Each of these transfers must be valid under applicable state law in order for the trust to have good title to the mortgage loans.

48. In addition, the PSA generally requires the transfers of the mortgage loans to the trust to be completed within a strict time limit after formation of the trust in order to ensure that the trust qualifies as a tax-free real estate mortgage investment conduit ("REMIC").

49. The applicable state trust law generally requires strict compliance with the trust documents, including the PSA, so that failure to comply strictly with the timeliness, indorsement, physical delivery, and other requirements of the PSA with respect to the transfers of the notes and security instruments means that the transfers would be void and the trust would not have good title to the mortgage loans.

50. The Offering Documents for each offering of the Certificates represented in substance that the issuing trust for that offering had obtained good title to the mortgage loans comprising the pool for the offering. In reality, however, Countrywide routinely failed to comply with the requirements of applicable state laws and the PSAs for valid transfers of the notes and security instruments to the issuing trusts. In *Kemp v. Countrywide Home Loans, Inc.*, Bkrtcy. No. 08-18700 (D.N.J.), Countrywide sought to prove that the Bank of New York, as trustee for an RMBS issuing trust that purportedly held Mr. Kemp's mortgage, was entitled to enforce the mortgage. Countrywide presented testimony by

Linda DeMartini, who had been employed by Countrywide Servicing for almost ten years as of August 2009 and was then a supervisor and operational team leader for the Litigation Management Department of Countrywide Servicing. Ms. DeMartini testified that, in her extensive career in the mortgage loan servicing business of Countrywide, "I had to know about everything . . . ." She testified that Countrywide Home originated Kemp's loan in 2006 and transferred it to the Bank of New York as trustee for the issuing trust, but that Countrywide Servicing retained the original note in its own possession and never delivered it to the Bank of New York because Countrywide Servicing was the servicer for the loan.

51. Even though DeMartini was presented by Countrywide as a witness in an attempt to prove that the loan documents had been validly transferred to the issuing trust, her testimony actually proved that the loan documents were never validly transferred. She testified that an allonge to the promissory note, which purported to transfer the note to the trust by indorsement, was prepared only in preparation for the litigation in 2009, long after the purported transfer of the note to the trust in 2006, and was never delivered to the trustee. Indeed, she testified that there was no ordinary business practice of signing an allonge at the time a note was purportedly transferred.

52. DeMartini also testified that the original note was retained by Countrywide and was never delivered to the trustee. Most significantly, she testified on direct examination that not delivering the original note to the trustee was Countrywide's standard business practice:

> Q. Ms. DeMartini, is it generally the custom to – for your investor [*i.e.*, the issuing trust] to hold the documents?
> A. No. They would stay with us as the servicer.
> Q. And are documents ever transferred to the investor?
> A. If we service-release them they would be transferred to whomever we're service-releasing them to.
> Q. So I believe you testified Countrywide was the originator of this loan?
> A. Yes.
> Q. So Countrywide had possession of the documents from the outset?
> A. Yes.
> Q. And subsequently did Countrywide transfer these documents by assignment or an allonge?
> A. Yes.
> Q. And –

> A. Well, transferred the rights, yes, transferred the ownership, not the physical documents.
> Q. So the physical documents were retained within the corporate entity Countrywide or Bank of America?
> A. Correct.
> Q. Okay. And would you say that this is standard operating procedure in the mortgage banking business?
> A. Yes. It would be normal – the normal course of business as the reason that we are the servicer, as we're the ones that are doing all the servicing, and that would include retaining the documents.

53. In response to questioning by the Bankruptcy Judge, DeMartini again testified that "I do know that it is our normal course of action with the loans that we service that we are the ones that retain the – that we retain those documents." In response to the Court's question whether the documents are "ever moved to follow the transfer of ownership," DeMartini testified that "it is not customary for them to move."

54. At a subsequent hearing in September 2009, Countrywide's counsel stated that

> [A]lthough . . . the UCC and the Master Servicing Agreement apparently requires that, procedure seems to indicate that they don't physically move documents from place to place because of the fear of loss and the trouble involved and the people handling them. They basically execute the necessary documents and retain them as long as servicing's retained. The documents only leave when servicing is released.

55. Based on the evidence quoted above, Chief Bankruptcy Judge Judith H. Wizmur held in November 2010 that the Bank of New York, as trustee for the issuing trust, could not enforce the mortgage loan for two reasons:

> First, under New Jersey's Uniform Commercial Code ("UCC") provisions, the fact that the owner of the note, the Bank of New York, never had possession of the note, is fatal to its enforcement. Second, upon the sale of the note and mortgage to the Bank of New York, the fact that the note was not properly indorsed to the new owner also defeats the enforceability of the note.

56. *Kemp v. Countrywide Home Loans, Inc.*, No. 08-18700-JHW, Slip Op., at *10-11 (Bkrtcy. D.N.J. Nov. 16, 2010). Judge Wizmur further held that Countrywide Servicing also could not enforce the mortgage loan, because as an agent for the owner of the note, Countrywide Servicing had no more authority to enforce the note than its principal, the Bank of New York. *Id.* at *21.

57. As DeMartini testified, Countrywide routinely did not transfer the original mortgage loan documents to the issuing trusts for MBS transactions, but rather retained the original

documents itself. Thus, Defendants failed to validly transfer the promissory notes and security instruments for many of the mortgage loans underlying the Certificates purchased by Plaintiffs to the issuing trusts for the Certificates.

58. In this case, just as in the *Kemp* case discussed above, it is apparent that Defendant BONY as trustee never has been the owner or holder in due course of the note or security deed for the property.

59. As such, Defendants, by their actions and omissions with respect to the disputed mortgage loan account have defrauded Plaintiff, destroyed Plaintiff's business reputation, and as a result they have damaged Plaintiff financially, emotionally, physically and socially, and have clouded the title to the property.

60. As a result of the actions of Defendants, Plaintiff Long has had to seek medical treatment for anxiety, sleeplessness, depression and emotional distress. (See Exhibit A, Affidavit of Plaintiff Tammy Jo Long, attached hereto and incorporated herein by this reference)

61. Despite being served on multiple occasions with valid disputes and demands for verification and validation of the alleged debt, Defendants have failed to cease collections of the unverified debt. (See Exhibit H, January 28, 2011 Notice of Foreclosure and Sale from Defendants to Plaintiff, attached hereto and incorporated herein by this reference)

62. Defendants have submitted unsubstantiated negative information about Plaintiff related to the disputed account to credit reporting agencies.

63. In their communications with the above named credit reporting agencies the Defendants have not indicated that the account is disputed by Plaintiff.

64. The property is very rare ocean front property that is zoned for expansion unlike other property in the area, and if Plaintiffs were to lose it to Defendants based upon the bogus assignment that Defendants have produced in foreclosure and the property is sold to a third party, Plaintiff would never be able to replace the property, or be fully compensated for that loss.

65. In addition, the likelihood is very high that Plaintiff would still be exposed to suits by as yet unidentified parties who hold the true note and mortgage on the property, and stand in true holder(s) in due course status as parties entitled to enforce Plaintiff Long's note. Based upon the documentation submitted by Defendants in the foreclosure on the property, and the information in the public record, it is these unidentified parties that Plaintiff Long may owe an obligation to, not Defendants.

66. Based upon the opinions of Plaintiff's attorneys that the alleged assignment of Plaintiff's Security Deed (1) was fabricated and prepared for purposes of foreclosure, (2) was not a valid assignment due to the fact that the last day the Plaintiff's mortgage loan documents could have been assigned to BONY as Trustee was December 23, 2004, and (3) the numerous other defects in the alleged assignment and note set forth above, Plaintiff ordered the institution of these legal proceedings to halt the foreclosure on the property, determine the true owner and holder of the note, obtain a true and accurate accounting of all sums alleged to be owed by Plaintiff on any outstanding obligation related to the property, and quiet the title of the property as to any adverse claims.

## CAUSES OF ACTION

## COUNT I – VIOLATIONS OF THE FDCPA

67. Plaintiffs hereby repeat and reallege the facts recited in paragraphs 1-67 above as though fully set forth herein.
68. The conduct of these Defendants in undertaking a false legal action in a foreign jurisdiction under foreign law, in misrepresenting the nature, status, and legal character of the alleged debt, in failing to report the Plaintiff's disputes to credit reporting agencies, constitute false and deceptive collection communications in violation of the Illinois Uniform Deceptive Business Practices Act, 815 ILCS §510 et seq., the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505 et seq., as well as numerous and multiple provisions of the FDCPA by these Defendants, including but not limited to 15 U.S.C. §1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10), 1692f, 1692f(1), 1692g(b).
69. Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of loss of work time, loss of income, humiliation, anger, anxiety, loss of consortium, emotional distress, fear, frustration, and embarrassment, amongst other negative emotions.
70. As a result of each and every Defendant's violations of the FDCPA, Plaintiff has suffered out-of-pocket expenses and are therefore entitled to actual damages pursuant to 15 U.S.C. §1692k(a)(1); statutory damages in an amount up to at least $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. §1692k(a)(3) from each and every Defendant.

## COUNT II - VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS §510 *et seq.*

71. Plaintiff restates and realleges paragraphs 1-67 above inclusive, as though fully set forth herein.
72. The conduct described in the paragraphs above has caused actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of the Defendant's collection services within the scope of the Uniform Deceptive Trade Practices Act, 815 ILCS 510 et seq.
73. Said conduct is generally and specifically within the meaning of the Uniform Deceptive Trade Practices Act, 815 ILCS 510(A)(12) and was committed by Defendants in the course of business and in a manner that is prohibited, unfair, and deceptive.
74. The Plaintiff has suffered a loss of money or property as a proximate result of the Defendant's aforesaid unfair or deceptive trade practice.
75. The foregoing acts and omissions of the Defendants were undertaken by it willfully, persistently, intentionally, and knowingly as part of their routine debt collection business, and Plaintiff relied upon such representations as being lawful, yet such conduct is prohibited
76. The conduct described above has tremendous potential to be repeated where other consumers similarly situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.
77. Defendants' unfair and deceptive acts have proximately caused emotional and actual damage and Defendants are liable to the Plaintiff for such injury.

## COUNT III - VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS §505 *et seq.*

78. Plaintiff restates and realleges paragraphs 1-67 above inclusive, as though fully set forth herein.
79. The Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 et seq. provides at section 2 that it is unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of trade or commerce within this state.
80. Debt collection is a service within the scope of "trade and commerce" as that term is defined under 815 ILCS 505 § 1(f) and at issue in this case, generally this service affects commerce and trade in this state.
81. The conduct described above is specifically and generally unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to

responsible and lawful consumer credit protection practices.

82. Defendants unfair methods and deceit make them liable to Plaintiff under 815 ILCS 505 § 2F

## COUNT IV – FCRA

83. Plaintiffs hereby repeat and reallege the facts recited in paragraphs 1-67 above as though fully set forth herein.
84. Defendants were served with valid disputes and demands for verification and validation of the alleged debt on numerous occasions by Plaintiff Long.
85. Defendants have communicated false and misleading information to credit reporting agencies in violation of the terms of the Fair Credit reporting Act, 15 U.S.C. §1681, *et seq*.
86. Defendants failed to review all relevant information provided by consumer reporting agencies, pursuant to 15 U.S.C. § 1681i (a)(2), and as required by 15 U.S.C. § 1681s-2(b)(1)(B).
87. Defendants failed to adequately conduct an investigation with respect to the disputed information, as required by 15 U.S.C. § 1681s-2(b)(1) after the Plaintiff's notice of dispute was received at the offices of Defendants.
88. Defendants failed to report the results of the investigation findings to the consumer reporting agencies that the information provided by such person was incomplete or inaccurate, as required by 15 U.S.C. § 1681s-2(b)(1)(D).
89. Defendants failed to report the results of the investigation to the consumer reporting agencies, as required 15 U.S.C. § 1681s-2(b)(1)(C).
90. Defendants verified that the disputed information was accurate and complete even though they were in possession of information which showed that the tradelines were inaccurate, and even though the tradelines did not contain the notice of dispute, as required by 15 U.S.C. § 1681s-2(a)(3).

## REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

91. Plaintiff repeats and realleges all of the above paragraphs of this Complaint as though fully stated herein.
92. There exists a dispute over whether Defendants have violated the FDCPA, the UDTPA and the Consumer Fraud and Deceptive Business Practices Act.
93. Plaintiff's home is scheduled to be sold at auction on March 1, 2011 under false pretenses as a result of the actions or omissions of the Defendants herein.

94. Plaintiff is entitled to injunctive relief to stop the unlawful sale of the Plaintiff's property, a declaratory judgment and a determination that Defendants violated the FDCPA, the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 et. seq., and the UDTPA, 815 ILCS 510 et. seq., and Plaintiffs are similarly entitled to an order enjoining said acts.

## JURY DEMAND

95. Plaintiff is entitled to and hereby respectfully requests that this cause be tried by a jury. U.S. Const. Amend. 7. Fed. R. Civ. Pro. 38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendants by this Court for the following:

1. Enter injunctive and corresponding declaratory relief establishing the foregoing conduct of Defendants to be unlawful, enjoining Defendants from the non-judicial sale of the property and from continuing to engage in said conduct, and granting such additional equitable relief as may be appropriate
2. Order a full and complete financial accounting of all sums paid on Plaintiff's mortgage loan to date from any source.
3. For a declaration and determination that Plaintiff is the rightful holders of title to the property and Defendants herein be declared to have no estate, title or interest in said property.
4. Award Plaintiff actual damages pursuant to 15 U.S.C. §1692k(a)(1) against each and every Defendant.
5. Award Plaintiff statutory damages of $1,000.00 per violation pursuant to 15 U.S.C. §1692k(a)(2) against each and every Defendant.
6. Award Plaintiff punitive damages as appropriate.
7. Award Plaintiff compensatory damages for mental and emotional distress, humiliation and embarrassment to be determined at trial.
8. Award Plaintiff reasonable attorney's fees and the costs of this action pursuant to 15 U.S.C. §1692k(a)(3).
9. Grant such other and further relief as this honorable Court deems just and proper.

Dated: February 23, 2011

Respectfully submitted,

By: /s/ Robert K. Lock, Jr.

Robert K. Lock Jr., Esq.
Attorney ID# 6202454
7144 North Harlem Avenue
Suite 323
Chicago, Illinois 60631
Telephone: (773) 685-8499
Facsimile:  (206) 338-6036
debtlawyer@COMCAST.NET

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                                    s/Robert K Lock Jr____

                                                    Robert K. Lock Jr., Esq.
                                                    Attorney for Plaintiff
                                                    Attorney ID# 6202454
                                                    7144 North Harlem Avenue
                                                    Suite 323
                                                    Chicago, Illinois 60631
                                                    Telephone: (773) 685-8499
                                                    Facsimile:  (206) 338-6036
                                                    debtlawyer@COMCAST.NET